## PANHANDLE & S. F. RY. CO. v. WILLIAMS.

### No. 3543.

Court of Civil Appeals of Texas. Amarillo.

April 22, 1931.

Rehearing Denied May 20, 1931.

Hoover, Hoover & Cussen, of Canadian, and Kinney & Ritchey, of Miami, for appellant.

Sanders & Scott, of Amarillo, for appellee.

RANDOLPH, J.

This case was filed in the district court of Roberts county by the plaintiff, Williams, seeking to recover for damages to cattle caused by the alleged negligence of the defendant railway.

A jury was waived, and all matters of fact as well as of law were submitted to the court. On trial the court rendered judgment for the plaintiff, and defendant appeals.

The alleged negligence, as set out in the plaintiff's petition, consisted of the continuous sounding by the engineer of the engine whistle without reasonable excuse, occasion, or necessity for same, causing the stampeding of the plaintiff's cattle, which were being driven along the highway alongside defendant's track, resulting in the death of a number of cattle and injury to others.

Appellee was the owner of approximately six hundred head of cattle, which he was moving from the stock pens of defendant at Miami, Tex., to his ranch in Roberts county. Plaintiff had brought these cattle from the El Capitan country in New Mexico. They were Texas Herefords, which had been sent out there for pasture and were being brought to plaintiff's ranch in Roberts county, Tex.

Regardless of the conflict between the various witnesses' testimony, we will quote or state such evidence as tends to sustain the trial court's judgment. If there is evidence to support the judgment, we have no right, under the law, to do else than to affirm the same. Neither will we attempt in detail to set out the topography of the country along the road being traveled in moving the cattle. It is sufficient to say that the cattle were being driven along the public highway where the owner was entitled to drive them. It is true that the evidence discloses there were other routes the owner could have driven them, but this is immaterial, as they were where they had a right to be on a public highway and were where the law would protect them in the reasonable exercise by the owner of his right to travel said highway. It is also true that the defendant's engineer had the right, and the law made it his duty, to blow the engine whistle at crossing signals, that whistling posts were placed for his instruction, and that the highway and railroad track being in such close proximity would not change the ordinary discharge of that duty, yet even then the engineer must perform that duty with due regard to the rights of others, and, if he negligently and continuously caused his whistle to sound in such manner as to frighten the cattle, then said whistling might become the basis for a recovery for the injury caused to the cattle. The fact that the highway and defendant's track run close together is no excuse for defendant's employees not to use ordinary care, but, on the contrary, where they are aware of the proximity or are charged with knowledge of same by the law, the duty of ordinary care in refraining from doing those things that might cause injury to others or their property devolves on such employees. Texas Central Railway Co. v. Boesch, 103 Tex. 256, 126 S. W. 8; F. W. & D. C. Ry. Co. v. Partin et ux., 33 Tex. Civ. App. 173, 76 S. W. 236, writ denied; Adams v. I. & G. N. Ry. Co. (Tex. Civ. App.) 122 S. W. 895.

We will now quote such evidence as sustains the trial court's judgment upon the question of whether or not the defendant's employee, in the sounding of the whistle, did so in a negligent manner as to cause the injury to plaintiff's cattle.

The defendant's train, as it approached the cattle sounded the whistle in the manner later indicated. The cattle were strung out along the highway for quite a distance, and when the whistling began they stampeded and broke through the fence along the highway and attempted in their fright to climb adjacent bluffs, some falling back on others and some jumping off of the bluffs. They got away from control of those in charge—three herdsmen—and traveled for a distance of several miles before they could be got under control. J. V. Williams, son of the owner of the cattle, was leading the herd at the time of the stampede. He testified that at the time of the sounding of the whistle the cattle were just walking along paying no attention to the train and that: "The engineer first sounded the whistle just back of the cattle; that was before the engine got to the bluff. As to how many times he sounded the whistle then, I state that I never counted it but it was several times; there were several blasts of the whistle. I was watching the cattle. The back part of the herd first started to run, the extreme back end, they started to run up the road northeast toward the front of the herd for a short distance and then they turned to the right when the train got even with them. * * * When he first whistled, the train was not right even with them, as it was back behind them a short distance—I could not say how far back—as much as fifty yards, I suppose, and when the whistle blew, I commenced to look after the cattle, trying to take care of them. I was riding back and forth among the cattle, and I continued to do that as long as I could, until they broke over the fence

south. Then I went with them. * * * You want me to tell the Court how the party in charge of the engine blew his whistle when he passed the herd and I state that he blew a long and a short and every way he wanted to, it seemed like, and he shot the steam on at the same time, did it all at the same time. The whistle was blown on this train after he reached my position at the front end of the herd. The cattle were traveling the same way the train was. As to how many times I would say that the whistle of the defendant's train was blown, I could not state the exact number, but he blew it practically all the way from the back end of the herd to the front end. * * * You want me to state if the party operating the defendant's train showed any signs in any way that he saw what was happening and going on. I state that I could see one of them laughing and he high-balled us. He was a man in the cab of the engine and that was where the whistling was coming from, in the engine. He was operating it at the time he high-balled us and was laughing and our cattle were stampeding and running at the time."

The evidence discloses that on the morning the cattle were turned out of the stock pens, and when they were moving off to the highway, an east-bound freight train passed them, and that it did not frighten the cattle. The trial court had the right to take this into consideration to refute defendant's contention that the cattle were wild and also as a circumstance that there must have occurred in the operation of the train which stampeded the cattle, something out of the ordinary.

The defendant also assigns error in that it requested the trial court in writing on August 1, 1930, to file his findings of fact and conclusions of law, and that the trial court did not file same until August 30, 1930, which was after the adjournment of that term of the court and not within the time required by law in which same should be filed.

There is nothing in the record to show that this failure of the court to so file such findings and conclusions was ever excepted to, but, if such an exception was reserved and shown by the record, the defendant shows no injury by reason of such failure. There is with and as a part of the record on this appeal a duly approved and authenticated statement of facts, and, it appearing that every contention of the defendant has been preserved, such failure to file the findings and conclusions does not give the defendant the right to have the case reversed. Barfield et al. v. Emery et al., 107 Tex. 306, 177 S. W. 952; Riley v. Austin et al., 112 Tex. 216, 245 S. W. 907.

Finding no reversible error, we affirm the judgment of the trial court.